IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

RECEIVED
USDC CLERK, CHARLESTON, SC
2006 DEC 19 P 2: 29

| | |
|---|---|
| M. William Wauben, III, | C. A. No. 2:05-2780-PMD-RSC |
| Plaintiff, | |
| -versus- | **REPORT AND RECOMMENDATION** |
| Protego (USA), Inc., and Michael Davies, | |
| Defendants. | |

This employment discrimination case alleging retaliatory discharge for protected opposition activity under Title VII, 42 U.S.C. § 2000e-2, 3, with appended state law claims and state law counterclaims, is before the undersigned United States Magistrate Judge for a Report and Recommendation on the parties' motions for summary judgment. 28 U.S.C. § 636(b).

The Plaintiff, M. William Wauben, III, filed suit timely on September 26, 2005, against his former employer, Protego USA, Inc., and its President Michael Davies. Wauben brought a cause of action for Title VII retaliation, and state law causes of action for violation of public policy, violation of the South Carolina Payment of Wages Act, breach of contract, promissory estoppel, breach of contract accompanied by a fraudulent act, and breach of the implied covenant of good faith and fair dealing. Defendants timely answered the complaint and asserted state law counterclaims for conversion and tortuous destruction of

1

property, negligent misrepresentation, libel and slander, and tortuous interference with business relations. Discovery is complete.

On August 28, 2006, Plaintiff filed a motion for summary judgment on his claims for violation of the South Carolina Payment of Wages Act, breach of contract, and on all Defendants' counterclaims. Defendants responded with a motion for summary judgment on all of Plaintiff's causes of action. Oral argument was had before the undersigned on November 29, 2006. Hence it appears consideration of the matter is appropriate.

## SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, this court first must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party bears the burden of proof at trial. Celotex Corp. v. Cattrett, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-23 (4th Cir. 1990). Once a

motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." <u>Teamsters Joint Council No. 83 v. CenTra, Inc.</u>, 947 F.2d 115, 119 (4th Cir. 1991); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986). Unsupported speculation is not enough to withstand a motion for summary judgment. <u>Ash v. United Parcel Service, Inc.</u>, 800 F.2d 409, 411-12 (4th Cir. 1986). Indeed, the court should draw reasonable inferences on behalf of the non-moving party, but it must not slip into "sheer speculation." The court may not move beyond inference and into the realm of mere conjecture. <u>Lovelace v. Sherwin-Williams Co.</u>, 681 F.2d 230, 242 (4th Cir. 1982).

## **LAW**

Title VII, which was enacted as part of the Civil Rights Act of 1964, provides that it "shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a) & (a)(1).

Plaintiff here alleges he was discharged in retaliation for his complaints of pregnancy and gender discrimination to Plaintiff's employer Michael Davies. Section 704(a) of Title VII forbids retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).[1]

A plaintiff may establish a *prima facie* case of retaliation by showing (1) that he engaged in protected activity under Title VII; (2) that the employer thereafter took adverse employment action against him; and (3) a sufficient causal connection existed between his protected activity and the employer's adverse action. EEOC v. Navy Federal Credit Union, 424 F.3d 397, 405-406 (4th Cir. 2005); Hopkins v. Baltimore Gas and Elec. Co., 77 F.3d 745, 754 (4th Cir. 1996); Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985).

---

[1] Defendants argued that since the plaintiff never "participated" in any EEO enforcement proceeding his case must fail. However, Plaintiff is clearly alleging that he "opposed" activity made unlawful by Title VII, and such opposition is also protected by §704 (a) of Title VII, 42 U.S.C. § 2000 e-3(a). See, e.g., E.E.O.C. v. Navy Federal Credit Union, 424 F.3d 397, 406 (4th Cir. 2005). The Fourth Circuit defines opposition activity as activity that "encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinion in order to bring attention to an employer's discriminatory activities." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253 (4th Cir. 1998).

4

Additionally, the United States Supreme Court has held that another element of the plaintiff's claim is proof that he worked for an "employer" within the definition of the act, 42 U.S.C. § 2000e-(b), that is, the plaintiff must make a showing that the entity by whom he was employed had 15 or more employees. Arbaugh v. Y & H Corp., ___ U.S. ___, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (holding that Title VII's 15-employee threshold is an element of a plaintiff's claim for relief on which the plaintiff bears the burden of proof, rather than a jurisdictional issue.).

The Plaintiff asserts that although Protego USA, Inc., does not employ 15 persons, it should nonetheless be considered an "integrated employer" with BFG which has 180 employees, and thus the numerosity requirement of Title VII would be met.

Under the "integrated employer" test, two companies may be considered so interrelated that they constitute a single employer. Hukill v. Auto Care, Inc., 192 F.3d 437, 442 (4th Cir. 1999). In determining whether to treat two corporate entities as one "integrated employer," the factors courts have considered include: (1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control. Id. However, no single factor is conclusive. Id.

**FACTS**

All facts are either undisputed or are taken in the light most favorable to the Plaintiff as the non-moving party and all inferences, drawn in the Plaintiff's favor to the extent they are supported by the record, are as follows.

Protego had seven (7) employees at all times relevant to the allegations of the complaint. (Davies depo. pp. 32, 56, Def. ex. III 3; Pay Journal of Protego, showing seven active employees as of 01/31/2005; Ex. III 4, Letter from Certified Public Accountants Rodl & Partner, Greenville South Carolina, stating that Protego USA, Inc. had seven employees as of January 31, 2005, and has seven employees as of August 28, 2006). Protego USA, Inc. is owned by Braunschweiger Flammenfilter (BFG). BFG is a German company with a manufacturing plant and corporate offices in Germany. (Davies depo. p. 18). BFG has over 3,000 products, however, the core of the business is divided into two main products which BFG manufactures: flame arrestors and conservation vents. (Davies depo. pp. 16-17). "Protego" is a trade name which BFG uses to identify these products. (Davies depo. p. 15).

The two highest ranking employees at BFG are Dr. Victor Halstrick and Christoph Leinemann. Halstrick is the managing director for sales and marketing at BFG and Leinemann is the managing director of design, production, research and development

6

at BFG.  (Ex. 1, M. Davies depo. pp. 20, 22, 68-69).  BFG was founded by Leinemann's father, Hubert Leinemann, who is no longer involved in the business.  (Davies depo. p. 69).  BFG employed at least 180 employees at all relevant times.  (Davies depo. p. 19).

Prior to 2002, BFG used SchuF USA, a company located in Mt. Pleasant, South Carolina, to market its products in the United States; Wauben was then employed by SchuF USA.  (Davies depo. pp. 19-20, 25-26).  At some point Leinemann decided that a company should be incorporated in the United States to market BFG's products and other products here.  (Davies depo. p. 22).  To that end, in April of 2001 BFG hired defendant Davies as its regional manager for the North American Free Trade market.  Davies was hired and was supervised at BFG by Halstrick.  (Davies depo. p. 15).  In hiring Davies, BFG was grooming him to serve as president of the marketing company which BFG planned to open in the United States.  (Davies depo. pp. 21-22).

Davies moved to the United States in late May 2002 to set up the marketing company which was to be named Protego USA, Inc. (Davies depo. p. 23).  Halstrick and Leinemann hired an attorney in the United States to incorporate the business.  (Davies depo. p. 23).  Protego USA, Inc. was originally incorporated in New Jersey, but that incorporation was cancelled and Protego USA, Inc., was then incorporated in South Carolina where it still

7

maintains its offices. (Davies depo. p. 28). Davies was then employed by Protego, USA, Inc. instead of BFG. Protego USA, Inc. began doing business in June 2002. (Davies depo. p. 28).

Davies and Halstrick hired plaintiff Wauben as sales manager for Protego USA, Inc. on or about June 1, 2002. (Wauben Aff.) The Employment Agreement between Wauben and Protego USA, Inc. was signed by Halstrick "for Protego USA, Inc.". Wauben reported directly to Davies, the President of Protego USA, Inc. Id.

The sole shareholder of Protego is BFG. (Davies depo. pp. 29, 59). Halstrick is the secretary and treasurer of Protego USA, Inc., and Leinemann is the executive vice president of the company. (Davies depo. pp. 21, 25). The board of directors at Protego USA, Inc., consists of Davies, Halstrick and Leinemann. (Davies depo. pp. 28-29). BFG provided the original financing for Protego USA, Inc. (Davies depo. p. 70).

Davies along with Halstrick and Leinemann act as the Board of Directors and Officers of Protego USA, Inc. and, as such, make decisions regarding how much employees are paid and how to spend other monies. (Davies depo. pp. 70). Neither BFG nor Protego USA, Inc. have a human resource department, but Lorie Klein is "charged with performing the human resources tasks" at Protego USA, Inc. (Davies depo. pp. 73-74). Wauben's "Official Note of Termination" was on Protego USA, Inc. letterhead. (Def. Ex. 11).

No BFG employees are also employed by Protego, USA, Inc. (Davies depo. pp. 72-73).

The vast majority of the products which Protego USA, Inc. sells are products manufactured by BFG in Germany, but it does sell products from resources other than BFG. (Davies depo. p. 72). Likewise BFG uses many other companies around the world to distribute its products. (Davies depo. p. 19).

Importantly, Protego USA, Inc. orders, is invoiced for, pays for, and takes delivery of all the BFG products which it then resells to its customers. Id. Protego USA, Inc. maintains its bank accounts in the United States independent of BFG's bank accounts which are maintained in Germany. Protego USA, Inc. files corporate tax returns in the United States, aided by their accounting firm in South Carolina. (Ex. to def. supplemental submission to their summary judgment motion). There is no shared infrastructure.

## DISCUSSION

A review of the record and relevant case law reveals that Wauben's Title VII claim cannot survive summary judgment because Protego USA, Inc. is not a covered entity subject to Title VII since it does not employee at least 15 persons. While the plaintiff argues that Protego USA, Inc. should be regarded as the same company as BFG in order to bring Protego USA, Inc. under Title VII, the record here does not support such integration.

9

The factors the court is to consider as indicated in <u>Huskill v. Auto Care, Inc.</u>, supra, are (1) interrelation of operations; (2) common management; (3) centralized control over labor relations; and (4) common ownership. No one factor controls. These factors will be discussed seriatim.

1.) Interrelation of operations.

Here, the two companies observed corporate formalities. Protego USA, Inc. was properly incorporated in the United States and maintains its offices in South Carolina. The two companies conduct separate banking operations, did not intermingle funds, maintained separate accounting books, and Protego USA, Inc. had its own South Carolina accounting firm who prepared its financial statements and taxes. Further, the two companies shared no infrastructure, Protego USA, Inc. bought and paid for, and took delivery on, the goods from BFG it resold to its customers, and Protego USA, Inc. sold its customers products manufactured by companies other than BFG. Likewise BFG used many other companies around the world to distribute its products. Hence, this factor does not counsel integration.

2.) Common management.

The plaintiff makes much of the fact that two of Protego USA, Inc.'s three officers and three members of the Board of Directors, Lienemann and Halstrick, were also in the top management of BFG. Nonetheless "One-hundred percent ownership

and identity of directors and officers are, even together, an insufficient basis for applying an alter ego theory to pierce the corporate veil." <u>Johnson v. Flowers Indus., Inc.</u>, 814 F.2d 978 at 982 (4th Cir. 1987) (citation and internal quotation marks omitted)).

Here, the third officer of Protego USA, Inc., and also the third member of the Board of Directors of Protego USA, Inc., is Protego USA, Inc.'s President, Davies. Davies was employed exclusively by Protego USA, Inc. at the relevant times. (Davies depo. pp. 63, 64). Davies ran the day to day operations of the defendant and was physically present there, unlike Lienemann and Halstrick. Neither Davies nor any other Protego USA, Inc. employee had anything to do with managing BFG. Further, while Lienemann and Halstrick had input into management decisions of the defendant, it appears that they provided such input only in their capacity as directors and officers of Protego USA, Inc. Again, it appears this factor does not favor integration.

3.) Centralized control over labor relations.

It does not appear that BFG exercised centralized control over labor relations. Neither company has a human resources department as such. Lorie Klein is "charged with performing the human resources tasks" at Protego USA, Inc., and she has nothing to do with BFG. Davies deposed that he made the personnel decisions for the defendant, not Lienemann and Halstrick.

(Davies depo. pp 59-60). Again, to the extent that Lienemann and Halstrick had input into decisions regarding personnel of the defendant, the only evidence is that they acted in their capacities as directors and officers of Protego USA, Inc.

    4.) Common ownership.

There is no dispute that BFG owns Protego USA, Inc. However, that fact alone is of limited value because ownership is merely reflective of the parent-subsidiary relationship. The fact of a parent-subsidiary relationship between two companies is not sufficient, as a matter of law, to impute liability to the parent for the alleged discriminatory actions of its subsidiary against that subsidiary's employees. Hukill at 442; Glunt v. GES Exposition Services, Inc., 123 F.Supp 2d 847, 875 (D. Md. 2000). In view of the strong policy against disregarding corporate forms in imposing liability, there must be much more than common ownership of entities to establish liability. See, e.g., Walker v. Toolpushers Supply Co., 955 F.Supp. 1377, 1384 (D. Wyo. 1997). In short, common ownership is only a factor to be considered along with the aforementioned other factors to determine if BFG is, in effect, the employer of the plaintiff.

A review of the Hukill factors strongly mitigates against disregarding Protego USA, Inc.'s status as a separate legal entity and indicates that BFG and Protego USA, Inc. should not be integrated to satisfy the numerosity requirement of Title VII.

As a result, the defendant is entitled to summary judgment on its Title VII cause of action because the plaintiff cannot meet his burden to establish that the defendant is a covered entity within the meaning of Title VII.

If the court accepts this report and recommendation, then the only original federal jurisdiction claim will be dismissed. 28 U.S.C. § 1367(c)(3) provides, "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) [providing for supplemental jurisdiction over all claims forming the same case or controversy] if the district court has dismissed all claims over which it has original jurisdiction ··· ." The Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995) (district court did not abuse its discretion in declining to retain jurisdiction over the state law claims). See also, e.g., United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726-27, 86 S.Ct. 1130 (1966); Revene v. Charles County Comm'rs, 882 F.2d 870, 875 (4th Cir. 1989).

Therefore, it is also recommended that the court exercise its discretion to decline supplemental jurisdiction over the remaining state law claims and counterclaims and dismiss them

without prejudice to their being filed in state court, thus ending the action here.

### CONCLUSION

Accordingly, since there exists no genuine material question of fact on the numerosity element of the Title VII cause of action thus entitling the defendant to judgment as a matter of law, it is recommended that the defendant's summary judgment motion be granted on the Title VII cause of action and the balance of the claims and counterclaims be dismissed without prejudice to their being brought in state court.

                                       Respectfully Submitted,

                                       Robert S. Carr
                                       United States Magistrate Judge

Charleston, South Carolina

December 19, 2006