IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| M. William Wauben, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: 2:05-2780-PMD-RSC |
| | ) | |
| | ) | **ORDER** |
| Protego (USA), Inc., and Michael Davies, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court upon the Magistrate Judge's recommendation that this court grant Defendant Protego (USA), Inc.'s ("Protego") and Defendant Michael Davies's ("Davies") Motion for Summary Judgment.[1] The record includes a Report and Recommendation ("R&R") of a United States Magistrate Judge, which was made in accordance with 28 U.S.C. § 636(b)(1)(B). A party may object, in writing, to an R&R within ten days after being served with a copy of that report. 28 U.S.C. § 636(b)(1). Plaintiff has filed timely objections to the R&R.

## **BACKGROUND**

Defendant Protego hired W. William Wauben, III ("Wauben" or "Plaintiff") as a sales manager in June of 2002, and Plaintiff reported directly to Protego's President, Davies. (Wauben Aff. ¶¶ 4-5.) Plaintiff alleges, *inter alia*, that during the course of his employment at Protego, Davies frequently made anti-Semitic comments and "openly stated that he [Davies] believed a

---

[1] The Magistrate Judge recommends granting summary judgment on the Title VII claim and dismissing the remaining claims and counterclaims without prejudice to their being filed in state court.

1

pregnant female who had to miss work due to morning sickness was faking her illness and that he planned to fire her because of her pregnancy." (Compl. ¶ 13; *see also* Wauben Aff. ¶¶ 5-9.) Plaintiff complained about Davies' comments and behavior to a managing director in Germany, Christoph Leinemann. (Wauben Aff. ¶ 10.) Although assured confidentiality, Davies confronted Plaintiff about his conversation with Leinemann and asked Plaintiff if he wanted to resign. (Wauben Aff. ¶ 12.) Plaintiff alleges that on or about January 13, 2005, Plaintiff complained to Davies about Davies's treatment of the pregnant female employee, and Davies fired Plaintiff.[2] (Wauben Aff. ¶ 13.)

On September 26, 2005, Plaintiff filed suit against Protego and Davies, listing the following causes of action: (1) Violation of Title VII (retaliation), (2) Violation of Public Policy, (3) Violation of the South Carolina Payment of Wages Act, (4) Breach of Contract, (5) Promissory Estoppel, (6) Breach of Contract Accompanied by a Fraudulent Act, and (7) Breach of the Implied Covenant of Good Faith and Fair Dealing. (*See* Compl.) Defendants answered on November 8, 2005, and asserted the following counterclaims against Wauben: (1) Conversion and Tortious Destruction of Property, (2) Negligent Misrepresentation, (3) Libel and Slander, and (4) Tortious Interference with Business Relations or Business Expectancy. (*See* Ans.)

On August 28, 2006, Plaintiff filed a Motion for Summary Judgment; Defendants filed a Motion for Summary Judgment on August 31. A hearing on these two motions was held before the Honorable Robert S. Carr, United States Magistrate Judge, on November 29, 2006. Judge Carr

---

[2]Plaintiff also asserts that a dispute arose regarding when Protego would pay him the commissions he earned in 2004. Although Plaintiff received the commission in 2004, he alleges the check was short by $14,120.95. (Compl. ¶ 21.) Plaintiff further asserts that pursuant to his employment contract, he is owed the unpaid commissions, six months of salary, and an additional $1600.00 of severance pay. (Compl. ¶ 25.)

2

issued an R&R on December 19, 2006, in which he recommended this court grant Defendants' Motion for Summary Judgment on Plaintiff's Title VII cause of action and dismiss the balance of the claims and counterclaims without prejudice to their being brought in state court. (*See* R&R at 14.) Specifically, Judge Carr recommended granting summary judgment on Plaintiff's Title VII claim because Plaintiff "cannot meet his burden to establish that the [D]efendant is a covered entity within the meaning of Title VII." (R&R at 13.)[3] Plaintiff filed Objections on January 10, 2007, and Defendants replied to these objections on January 17.

## STANDARD OF REVIEW

### A.     Legal Standard for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990).

---

[3]It is undisputed that Protego itself only had seven employees at all relevant times. (*See* R&R at 6; *see also* Letter from Rodl Langford de Kock LLP to Whom it May Concern (Aug. 28, 2006); Davies Dep. 56:8-56:24, Apr. 11, 2006.) However, Plaintiff argues Protego should be considered an "integrated employer" with Braunschweiger Flammenfilter ("BFG"), a German company with a manufacturing plant and corporate offices in Germany. (*See* Davies Dep. 17:22-18:15.) For a discussion of the integrated employer test, see infra pages 4-5. BFG has approximately 180 employees. (Davies Dep. 18:16-19:15.)

3

**B.     Magistrate Judge's R&R**

This court is charged with conducting a *de novo* review of any portion of the Magistrate Judge's R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R&R. 28 U.S.C. § 636(b)(1). After a review of the entire record, the R&R, Plaintiff's Objections, and Defendants' Reply to Plaintiff's Objections, the court finds the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the court adopts the R&R and fully incorporates it into this Order.

## ANALYSIS

**A.     Title VII**

Pursuant to Title VII, "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Furthermore, Section 704(a) of Title VII forbids an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). An "'employer' means a person . . . who has fifteen or more employees . . ." 42 U.S.C. § 2000e(b). In the recent opinion of *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 126 S. Ct. 1235 (2006), the Supreme Court held "that the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue." *Arbaugh*, 126 S. Ct. at 1245.

Despite the fifteen-employee requirement, two companies may be so interrelated that they constitute a single employer. Under the "integrated employer" test, the factors to consider in determining whether to treat two corporate entities as one are "(1) the interrelation of operations[,] (2) centralized control of labor relations[,] (3) common management[,] and (4) common ownership or financial control." *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 981 n* (4th Cir. 1987) (applying the test in an age discrimination case); *see also Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999) (applying the test in a case brought pursuant to the Family and Medical Leave Act).[4] No single factor is conclusive, but the most critical factor is the control of labor operations. *See Hukill*, 192 F.3d at 442 (citing *Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d 761, 764 (5th Cir. 1997)).

### B.     Plaintiff's Objections[5]

Following the Magistrate Judge's R&R, Plaintiff filed two specific, written objections: (1) the R&R failed to address Plaintiff's waiver argument, and (2) the Magistrate Judge erred in

---

[4]This test also applies in cases brought under Title VII. *Cf. Hukill*, 192 F.3d at 442 n.6; *Thomas v. Bet Sound-Stage Restaurant/BrettCo, Inc.*, 61 F. Supp. 2d 448, 456 (D. Md. 1999).

[5]On December 21, 2006, Plaintiff filed a Motion to Alter or Amend Judgment Under Rule 59(e). Plaintiff argued that Protego "wholly failed to raise the 15 person defense in its Answer" and that Protego had therefore waived this defense. (Pl.'s Mot. to Alter or Amend Judgment at 1.) Plaintiff asserted the R&R did not address this argument and therefore should be amended. Because the proper procedure was to file an objection to the Magistrate Judge's R&R, this court will consider Plaintiff's waiver arguments as an objection. The court notes Plaintiff did raise this objection when he filed his Objections to the R&R on January 10, 2007. Plaintiff's Motion to Alter or Amend Judgment is therefore rendered moot.

Defendants argue this court should not consider Plaintiff's objections because they were not timely filed. Plaintiff filed his objections on January 10, 2007, which is outside of the ten day period for filing objections to an R&R. *See* 28 U.S.C. § 636(b). However, Plaintiff filed his Motion to Amend or Alter Judgment on December 21, 2006, which was well within the ten days allowed for filing objections. The court will therefore consider the merits of Plaintiff's objections.

5

recommending the court grant Defendants' Motion for Summary Judgment on the Title VII claim because Plaintiff has provided sufficient evidence to create an issue of fact regarding whether Protego should be combined with BFG for Title VII purposes. (*See* Pl.'s Objections.)

### 1.     Waiver

Plaintiff asserts the Magistrate Judge erred in not addressing Plaintiff's waiver argument in the R&R. Specifically, Plaintiff argues that because Protego "wholly failed to raise the 15 person defense in its Answer," Protego has waived this defense. (Pl.'s Objections at 2.)

Although the Magistrate Judge did not explicitly address Plaintiff's waiver argument, he did note that the Supreme Court's *Arbaugh* opinion "held that another *element* of the plaintiff's [Title VII] claim is proof that he worked for an 'employer' within the definition of the act . . . ." (R&R at 5 (emphasis added).) Thus, the Magistrate Judge clearly found that the "15 person defense" is not really a defense but is, in actuality, an element of Plaintiff's claim.

However, even if the Magistrate Judge erred in not addressing Plaintiff's waiver argument, the court finds the waiver argument meritless. In *Arbaugh*, 546 U.S. 500, 126 S. Ct. 1235, the plaintiff brought a Title VII action against her former employer. The jury returned a verdict in favor of the plaintiff, and two weeks after the court entered judgment on the verdict, the defendant moved to dismiss for lack of federal subject matter jurisdiction. *Arbaugh*, 126 S. Ct. at 1238. The motion to dismiss was the first time the defendant asserted that it was not amenable to suit under Title VII because it had fewer than fifteen employees. *Id*. The district court granted the defendant's motion because it believed the numerical requirement was jurisdictional. *Id*.

On appeal, the Supreme Court noted that the lack of subject matter jurisdiction may be "raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial

and the entry of judgment." *Id.* at 1240. However, the objection that a complaint fails to state a claim upon which relief can be granted "may not be asserted post trial. Under Rule 12(h)(2), that objection endures up to, but not beyond, trial on the merits . . ." *Id.* The Supreme Court found "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue." *Id.* at 1245. "[T]he employee-numerosity requirement relates to the substantive adequacy of [the plaintiff's] Title VII claim, and therefore c[annot] . . . be raised defensively late in the lawsuit, *i.e.*, after [the defendant] had failed to assert the objection prior to the close of trial on the merits." *Id.* at 1238-39.

While it is Plaintiff's position that *Arbaugh* "makes it abundantly clear that it [the numerosity requirement] is an element of a plaintiff's claim and it has to be alleged in the answer as a defense," (Mot. Summ. J. Hr'g Tr. 12-13, Nov. 29, 2006), this court disagrees with Plaintiff. While Plaintiff is correct in that the numerosity requirement is an element of Plaintiff's claim, *see Arbaugh*, 126 S. Ct. at 1245, Defendants did not waive the argument concerning numerosity simply because they did not assert it in their Answer. The defense of failure to state a claim upon which relief can be granted "may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits." Fed. R. Civ. P. 12(h)(2); *see also Arbaugh*, 126 S. Ct. at 1240. Plaintiff's argument that Defendants have waived the numerosity argument is therefore without merit.

### 2. Integrated Employer

Plaintiff's second objection to the Magistrate Judge's R&R argues that Plaintiff "has provided sufficient evidence to create an issue of fact as to whether Defendant Protego (USA) should be combined with BFG for Title VII purposes." (Pl's Objections at 2.) Plaintiff states,

> First, the Report and Recommendation ignores the recent ruling by the United States Supreme Court in the *Arbaugh* case which holds that "When satisfaction of Title VII's numerical qualifications is at issue . . . the jury, rather than the trial court, is the proper trier of contested facts." *Arbaugh v. Y & H Corp.*, 126 S. Ct. 1235, 1244-1245 (2006).

(Pl.'s Objections at 3.)  A review of *Arbaugh*, however, reveals no such citation or principle. *Arbaugh* addressed the issue of whether Title VII's numerosity requirement "affects federal-court subject-matter jurisdiction or . . . delineates a substantive ingredient of a Title VII claim for relief." *Arbaugh*, 126 S. Ct. at 1238.  Presumably Plaintiff's quotation comes from *Hirsbrunner v. Martinez Ramirez*, 438 F. Supp. 2d 10 (D.P.R. 2006), which recites the principle as Plaintiff states and cites to *Arbaugh* for support.  *See Hirsbrunner*, 438 F. Supp. 2d at 15.  As previously noted, however, a review of *Arbaugh* reveals no such principle.  Thus the Magistrate Judge did not, as Plaintiff argues, "ignore[] the recent ruling by the United States Supreme Court."  (Pl's Objections at 3.)

Plaintiff next argues the Magistrate Judge "wholly ignored" Plaintiff's evidence supporting the argument that Protego and BFG should be considered integrated for purposes of Title VII. (Pl.'s Objections at 3.)  Before addressing this objection, the court will review (1) the relationship between BFG and Protego and (2) the Magistrate Judge's R&R.

### a.     Relationship between BFG and Protego

As previously noted, BFG is a German company with a manufacturing plant and corporate offices in Germany.  (Davies Dep. 17:22-18:15.)  Prior to 2002, BFG used a company called ShuF USA to market its products in the United States.  (Davies Dep. 19:22-20:2.)  At some point, Christoph Leinemann, BFG's director of design, production, research, and development,[6] decided

---

[6] Leinemann also serves as the executive vice president of Protego.  (Davies Dep. 25:12-25:14.)

that BFG should establish its own company in the United States to market its product there. (Davies Dep. 22:4-22:24.) To that end, in April of 2001, BFG hired Davies as a regional manager, and Victor Halstrick, BFG's managing director for sales and marketing,[7] supervised Davies. (Davies Dep. 15:3-15:10; Davies Dep. 68:25-69:16.) In hiring Davies, BFG was grooming him to serve as president of the marketing company BFG planned to open in the United States. (Davies Dep. 21:16-22:3.)

Davies moved to the United States in May of 2002 to set up Protego. (Davies Dep. 23:6-23:8.) Halstrick and Leinemann hired an attorney to incorporate Protego, and Protego is now incorporated as a South Carolina corporation. (Davies Dep. 23:13-23:24; Davies Dep. 28:4-28:12.) BFG provided the original financing for Protego, (Davies Dep. 70:13-70:15), and when Protego began doing business in June of 2002, Davies became employed by Protego instead of BFG. (Davies Dep. 28:2-28:23.) Davies currently serves as the president of Protego, reporting directly to Halstrick and Leinemann. (Davies Dep. 28:13-28:23.) The board of directors at Protego is Davies, Halstrick, and Leinemann, (Davies Dep. 28:24-29:3), and BFG is the sole shareholder of Protego. (Davies Dep. 29:4-29:11.) As of early 2005, 95% of Protego's sales were BFG products. (Davies Dep. 72:3-72:9.)

Neither BFG nor Protego has a human resources department, but Lore Klein is responsible for performing the human resources tasks at Protego. (Davies Dep. 73:8-74:4.) However, when employees at Protego had a problem, they would often contact Leinemann directly. (*See* Davies Dep. Ex. 2 & 6; Mason Dep. 70:11-79:19, Apr. 11, 2006.) At some point, BFG sent one of its employees, Sascha Pineda, to Protego to see if having a Spanish-speaker could have an effect on the

---

[7]Halstrick is also the secretary of Protego. (Davies Dep. 25:12-25:14.)

9

Mexican market. (Davies Dep. 128:23-130:7.) However, no BFG employees are also employed by Protego, and no Protego employees are employed by BFG. (Davies Dep. 72:25-73:7.)

At Protego, Halstrick and Leinemann were responsible for making hiring and firing decisions. (Davies Dep. 25:19-26:13; Davies Dep. 57:15-59:25; Davies Dep. 61:7-21.)[8] Davies suggested the amount of salaries to be paid to Protego's employees, and the board of directors (Davies, Halstrick, and Leinemann) would then have to approve that amount. (Davies Dep. 70:6-70:12.) Davies generally decided how to spend money at Protego, but if he was unsure, he would consult Halstrick and Leinemann. (Davies Dep. 70:16-70:23.)

Volkmar Schliebs, who was serving as controller of BFG, attended some meetings at Protego. (Davies Dep. 67:6-67:14; Davies Dep. 88:4-88:23; Davies Dep. 111:22-112:4.) One of Schliebs's reports, which was distributed to Hubert Leinemann,[9] Halstrick, Christoph Leinemann, and Davies, provided as follows: "Negociation [sic] with Matt regarding his commission and the financial situation with Protego USA very positive. 10.000 Dollar less per year." (Davies Dep. Ex. 4.) Schliebs also advised Protego that it would need to cut costs, (Davies Dep. 90: 15-90:24), and when Plaintiff told Davies he wanted his commission paid at the time originally promised, Davies responded that he would have to check with Schliebs. (Pl.'s Dep. 138:12-138:22, Apr. 10, 2006.)

While the vast majority of Protego's sales are BFG products, Protego does sell products from resources other than BFG. (Davies Dep. 72:3-72:9.) BFG likewise uses many other companies around the world to distribute its products. (Davies Dep. 19:16-19:21.) Protego orders, is invoiced

---

[8]Davies deposition reveals that he also had input into Protego's hiring and firing decisions. (Davies Dep. 25:22-26:13; Davies Dep. 59:9-59:25.)

[9]Hubert Leinemann is no longer involved with these companies.

for, pays for, and takes delivery of all BFG products which it then resells to its customers. *See* Letter from Steven L. Cooper, Rodl Langford de Kock LLD, to Dr. Michael Davies (Nov. 30, 2006). Protego files its tax returns in the United States with the help of an accounting firm in South Carolina. *Id*.

### b. The R&R

Applying the integrated employer test from *Hukill*, the Magistrate Judge found the record could not support such integration. (R&R at 9.) The Magistrate Judge found the first factor, interrelation of operations, to weigh against integration. The Magistrate Judge was persuaded by the following facts: the two companies observed corporate formalities and maintained separate banking operations and accounting books, the companies shared no infrastructure, and Protego bought and paid for all the goods from BFG that it sold to its customers. (R&R at 10.) Furthermore, Protego sold some products that were not BFG products. (R&R at 10.)

The second factor is centralized control over labor relations. The Magistrate Judge stated that "[i]t does not appear that BFG exercised centralized control over labor relations." (R&R at 11.) Lore Klein, a Protego employee who has nothing to do with BFG, is in charge of Protego's human resources tasks. Furthermore, "to the extent that Leinemann and Halstrick had input into decisions regarding personnel of the defendant [Protego], the only evidence is that they acted in their capacities as directors and officers of Protego USA, Inc." (R&R at 12.)

The Magistrate Judge also found the factor regarding common management did not weigh in favor of integration. The Magistrate made this finding even though Halstrick and Leinemann, officers and directors of Protego, are also directors of BFG. The Magistrate noted that Protego had another officer, Davies, who was not employed by BFG. Judge Carr stated, "[W]hile Leinemann

11

and Halstrick had input into management decisions of the defendant [Protego], it appears that they provided such input only in their capacity as directors and officers of Protego USA, Inc." (R&R at 11.)

With respect to the fourth factor, common ownership, the Magistrate Judge acknowledged that BFG owns Protego. Judge Carr stated, however, that this "fact alone is of limited value because ownership is merely reflective of the parent-subsidiary relationship." (R&R at 12.) He stated that the fact of a parent-subsidiary relationship "is not sufficient, as a matter of law, to impute liability to the parent for the alleged discriminatory actions of its subsidiary against that subsidiary's employees." (R&R at 12.)

### c.     The Objection

Plaintiff asserts the Magistrate Judge erred in recommending the court grant Defendant's Motion for Summary Judgment with respect to the Title VII claim because he "wholly ignored" evidence favorable to Plaintiff. (Pl.'s Objections at 3.) Specifically, Plaintiff argues the Magistrate Judge ignored the following evidence:

1. Neither BFG nor Protego have a human resource department.

2. Leinemann and Halstrick made hiring decisions for Protego.

3. According to Davies he would recommend or suggest the amount of salaries to be paid to employees at Protego, but Halstrick and Leinemann would have to approve the amounts.

4. Davies also testified that he would decide how the money at Protego was spent, but if he was not sure, he would consult Halstrick and Leinemann.

5. Davies testified he reports to Halstrick and Leinemann, and that he regularly provided Halstrick and Leinemann with reports on Protego's activities and sales.

6. The Controller at BFG, Schliebs, attended meetings at Protego and negotiated salaries and wages with Protego's employees.

> 7. Davies and his wife would go on business trips with Leinemann, and Leinemann would make them all stay in the same hotel room so that Protego could save money.
>
> 8. At one point, BFG sent one of its employees, an employee who could speak Spanish, to Protego to work, to see if he could generate more sales in the Mexican Market. During this time BFG paid the employee's wages.
>
> 9. Apparently, BFG had the authority to determine which commissions Protego received, because Davies threatened to physically assault Halstrick if Halstrick made a decision that could negatively impact the allocation of commissions.
>
> 10. When Wauben insisted to Davies that he wanted his 2004 commissions paid at the agreed upon time, Davies responded he would have to check with BFG's controller, Schliebs.
>
> 11. In September of 2004, BFG sent a letter to Davies, on BFG letterhead, sighed by Halstrick and Leinemann on behalf of BFG.
>
> 12. On or about November 14, 2003, Halstrick prepared a minutes of meeting document which purported to document a meeting he had with Hill, Mason and Davies. According to the document, Hill and Mason had complained to him about Wauben's working style and performance. The memo went on to state: The managing director, Mr. Davies, is therefore required to give Mr. Matt Wauben a corresponding note personally and complain. In case of dunning his dismission must be considered.
>
> 13. In another meeting on April 2, 2004, Davies and Schliebs announced to employees that "goals will have to be reached for this year, otherwise we will be forced to reduce costs by letting a employee go."

(Pl.'s Objections at 4-8.)

Despite all this evidence Plaintiff asserts the Magistrate Judge ignored, the court concludes the Magistrate Judge properly recommended this court grant Defendants' Motion for Summary Judgment with respect to the Title VII claim. As previously noted, courts consider four factors in determining whether to treat two corporate entities as one: (1) the interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. *See Hukill*, 192 F.3d at 442.

The evidence does not support a finding that the operations of Protego and BFG are sufficiently related to consider them integrated for purposes of Title VII. Protego is a South Carolina corporation; BFG is a German corporation. Though BFG is the sole owner of Protego, the two entities maintain their separate corporate identities. Protego has its own banking operations and accounting books, and it shares no infrastructure with BFG. Although Protego sells BFG products, it sells other products as well. Furthermore, Protego is invoiced and pays for any inventory it purchases from BFG. While "two entities [can] be considered a single employer if one entity dominates the operations of another," *Harris v. Palmetto Tile, Inc.*, 835 F. Supp. 263, 268 (D.S.C. 1993), the evidence does not support a finding that BFG dominates Protego's operations. There is no evidence that BFG and Protego commingled funds and assets, nor is there any evidence that Protego was severely undercapitalized. Although Leinemann and Halstrick serve as directors for both entities, Protego and BFG do not utilize the same work force or same office space. Accordingly, this factor does not weigh in favor of integration. *See Harris*, 835 F. Supp. at 268; *see also Johnson*, 814 F.2d at 981-82.

The second factor, the centralized control of labor operations, is the most important factor. *See Hukill*, 192 F.3d at 442; *see also Harris*, 835 F. Supp. at 266. As the Magistrate Judge noted in his R&R, neither company has a human resources department. (*See* R&R at 12.) Although Plaintiff makes much of the fact that Leinemann and Halstrick were involved in hiring and firing decisions, both were directors and officers of Protego. As the Fourth Circuit has stated, "One-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to pierce the corporate veil." *Johnson*, 814 F.2d at 982. Thus many of the acts that Plaintiff argues point to integration are, in fact, acts done on behalf of Protego.

Plaintiff points out that Halstrick and Leinemann wrote a letter, on BFG letterhead, to Davies regarding Plaintiff's poor performance. The letter stated, "On the basis of the above-mentioned reasons we as the shareholder of PROTEGO USA have to instruct you that another complaint which is made about Matt Wauben has to lead to a dismissal." (*See* Davies. Dep. Ex. 2.) However, this letter does not indicate the relationship between BFG and Protego went beyond the normal parent-subsidiary relationship. If BFG "hired and fired" Protego employees, "routinely shifted" employees between the two companies, and supervised Protego's daily operations, then BFG and Protego would likely be considered integrated. *Johnson*, 814 F.2d at 981. There is evidence that Halstrick and Leinemann participated in hiring and firing decisions, but Davies testified that they did so as directors of Protego. (Davies Dep. 59:15-61:25.) It is well established "that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." *United States v. Bestfoods*, 524 U.S. 51, 69 (1998). Furthermore, assuming Schliebs did negotiate with Plaintiff to take $10,000 less in commission, such a fact does not indicate BFG had centralized control of Protego's labor operations.[10] *Cf. Johnson*, 814 F.2d at 981.

The third factor to consider is common management. Although Halstrick and Leinemann served as directors of both BFG and Protego, such a fact does not mean this court should find in favor of integration. This is especially true because "[o]ne-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to

---

[10]Plaintiff argues Schliebs "attended meetings at Protego and negotiated salaries and wages with Protego's employees." (Pl.'s Objections at 5.) It is interesting, however, that Plaintiff denies Schliebs got Plaintiff to agree to the $10,000 reduction, as this is the only instance Plaintiff points to in order to show that Schliebs negotiated a Protego employee's salary. (*See* Pl.'s Objections at 5-6.)

pierce the corporate veil." *Johnson*, 814 F.2d at 982. In the case *sub judice*, BFG does own Protego, but the directors and officers of the two entities are not identical. Furthermore, the record reveals that Davies made many decisions for Protego without consulting Halstrick and Leinemann. (*See, e.g.,* Davies Dep. 70:16-70:23.)

The last factor is common ownership or financial control. Although BFG owned Protego, there is no evidence that BFG financially controlled Protego. On the contrary, Protego had its own bank accounts and accounting books, and it filed its own tax returns in the United States. As the Magistrate Judge noted, "[t]he fact of a parent-subsidiary relationship . . . is not sufficient, as a matter of law, to impute liability to the parent for the alleged discriminatory actions of its subsidiary against that subsidiary's employees." *See* R&R at 12; *Glunt v. GES Exposition Servs., Inc.*, 123 F. Supp. 2d 847, 875 (D. Md. 2000).

In sum, there is no genuine issue of material fact regarding whether BFG and Protego are integrated for purposes of Title VII. As the Magistrate Judge stated, "A review of the *Hukill* factors strongly mitigates against disregarding Protego USA, Inc.'s status as a separate legal entity and indicates that BFG and Protego USA, Inc. should not be integrated to satisfy the numerosity requirement of Title VII." (R&R at 12.) This court therefore grants Defendants' Motion for Summary Judgment with respect to the Title VII claim and declines to exercise supplemental jurisdiction over the remaining causes of action.

## CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that Defendants' Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's Title VII claim. It is further **ORDERED** that the remaining claims and counterclaims be **DISMISSED** without prejudice to their being brought in state court.

**AND IT IS SO ORDERED**.

_____
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**March 9, 2007**